1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

ROBERT EARLE JOHNSON,

12

Plaintiff,

13

v.

14

CHRISTINE O. GREGOIRE, *et al*,

15

Defendants.

16

Case No.  C08-5428FDB-KLS

ORDER TO SHOW CAUSE

17

18

19

20

21

22

23

24

25

26

27

28

    This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. §

636(b)(1),  Local Magistrates Rules MJR 3 and 4, and Rule 72 of the Federal Rules of Civil Procedure.

The case is before the Court upon defendants' filing of a motion to dismiss defendants Christine Gregoire,

Ronald Van Boening and Chad Hostetler from this matter for failure to state a claim against them for

which relief may be granted pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), and

to dismiss all claims against defendants Brenea Montgomery, Lanette Ngete and Jolene Naranjo for

failure to exhaust administrative remedies pursuant to Fed. R. Civ. P. 12(b). (Dkt. #29).  After reviewing

the complaint, defendants' motion, the remaining briefing from both parties, and the balance of the

record, the Court finds and orders as follows:

I.    Plaintiff's Motions to Strike

    On October 22, 2008, plaintiff filed a combined response to defendants' motion to dismiss and a

ORDER
Page - 1

motion to strike certain statements contained in that motion. (Dkt. #33). Specifically, plaintiff asserts that defendants are intentionally attempting to mislead the Court regarding the facts of this case, and therefore requests that paragraphs 7 through 10 in the statement of material facts section and the first paragraph of the argument section set forth in defendants' motion to dismiss be stricken as erroneous. For the reasons set forth below, however, the Court disagrees, and, therefore, plaintiff's motion to strike those paragraphs hereby is DENIED.

In paragraph 7 of the statement of material facts section, defendants state that plaintiff's real name is Robert Anderson, and not Robert Earle Johnson. (Dkt. #29, p. 4). Plaintiff contests this, stating that a copy of his birth certificate "is in his central file." (Dkt. #33, p. 4). Plaintiff, however, has not provided the Court with a copy of his birth certificate, nor has he argued or shown that he is unable to obtain a copy thereof. On the other hand, neither have defendants, other than a statement provided by Devon Schrum, the Grievance Program Manager for the Washington State Department of Corrections ("DOC") regarding plaintiff's purported real name. (Dkt. #29-2, Exhibit 1, Declaration of Devon Schrum, p. 3, ¶ 8). Indeed, a copy of what Ms. Schrum presents as plaintiff's official grievance summary attached to her declaration is for an inmate with the name of Robert E. Johnson. (Id., Exhibit 1, p. 4, ¶ 12, Attachment A). Regardless, the Court declines to grant plaintiff's request here, as the contested factual issue of plaintiff's real name is not material to the resolution of this matter.

In paragraph 8, defendants state plaintiff claims in his complaint that various prison health care providers failed to properly treat and respond to his diabetes, requiring him to take insulin shots at the wrong time, and refusing to give him medically prescribed items. (Dkt. #29, p. 4). Plaintiff argues his claims have nothing to do with him taking insulin shots at the wrong time, but rather defendants Ngete and Naranjo refused to allow him to inject insulin either a few minutes prior to or during breakfast. But this is exactly what defendants state plaintiff is claiming in his complaint, that he was not being provided with medical treatment – specifically his insulin shots – at the right times. Accordingly, plaintiff's request to strike defendants' paragraph eight is without merit.

In paragraph 9, defendants state plaintiff's claims that prison health care staff's failure to give him insulin shots at the proper time or to let him have medically prescribed items for his diabetes are grievable issues under the DOC's grievance system. (Dkt. #29, p. 4). Plaintiff asserts this statement is inaccurate, because contrary to defendants' understanding of the facts regarding inadequate medial care, "[t]wo hours

of waiting after injecting aspart insulin [prior to eating breakfast] would have killed" him "within an hour." (Dkt. #33, p. 5). But defendants' statement here is not inconsistent with plaintiff's allegation that he had to wait for too long a period of time between being injected with insulin and eating breakfast. As such, plaintiff's request to strike defendants' statement lacks merit in this instance as well.

In paragraph 10, defendants state that while plaintiff did file a grievance concerning the timing of his insulin shots, DOC official grievance records show he did not file any grievances regarding his claim that prison medical staff failed to give him medically prescribed items. (Dkt. #29, p. 4). They further state that the grievance plaintiff did file was withdrawn because he considered the grievance to be resolved, and that he did not appeal that grievance to the highest level, such that he failed to exhaust his administrative remedies on his claims related to treatment of his diabetes by prison health care staff. Plaintiff asserts this Court must take judicial notice of the fact that he did not withdraw his grievance, and thus should strike defendants' statement here. Although the record, as discussed in further detail below, is not entirely clear regarding what happened to plaintiff's grievance, because of that lack of clarity, this is a contested fact the Court may take into consideration in determining whether plaintiff has exhausted all of his administrative remedies. The request to strike thus is without merit here too.

Finally, plaintiff moves to strike the first paragraph of the argument section of defendants' motion to dismiss, asserting without any specificity or proof thereof that defendants are attempting to mislead the court by misrepresenting facts and evidence in that paragraph. Defendants, however, merely state plaintiff alleges that he sent a letter to defendant Christine Gregoire regarding racial discrimination in the extended family visitation ("EFV") program at the McNeil Island Corrections Center ("MICC"), that defendant Ruben Cedeno responded to that letter at defendant Gregoire's request, and that defendant Cedeno refused to investigate and respond to the letter because plaintiff had a federal lawsuit pending. Defendants also argue plaintiff failed to state a claim for relief against defendant Gregoire. With respect to defendants' statements regarding plaintiff claims, those are accurate descriptions thereof. Their assertion that plaintiff has failed to state a claim here also, as discussed in further detail below, is accurate. As such, this request to strike contained in plaintiff's motion also will not be granted.

Plaintiff, in addition, has filed a sur-reply to defendants' reply, in which he moves to strike certain allegedly erroneous information contained therein. (Dkt. #36). Specifically, plaintiff alleges defendants fabricated their claim that no investigation was conducted concerning the claims in the grievance he

ORDER
Page - 3

1    submitted, and that he received no response to or remedy for those claims.  As discussed in further detail

2    below, however, these again are contested facts which properly may be considered in determining if

3    exhaustion of administrative remedies has occurred.  The motion to strike contained in plaintiff's sur-

4    reply (Dkt. #36) therefore hereby is DENIED as well.

5    II.        Failure to Exhaust Administrative Remedies

6              A.        Standard of Review

7              The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e) "does not impose a pleading

8    requirement" on plaintiff, but rather "creates a defense," with respect to which "defendants have the

9    burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

10   Cir. 2003).  Because "[t]he failure to exhaust nonjudicial remedies that are not jurisdictional should be

11   treated as a matter in abatement," it "is subject to an unenumerated Rule 12(b) motion rather than a

12   motion for summary judgment." Id.; see also Ritza v. International longshoremen's and Warehousemen's

13   Union, 837 F.2d 365, 369 (9th Cir. 1988) (finding that while no defense described in 12(b)(1) through (7)

14   encompasses failure to exhaust, federal courts traditionally have entertained certain pre-answer motions

15   not expressly provided for by rule, and authority to hear such motions lies in federal court's inherent

16   power to regulate actions pending before it).

17             The PLRA provides that "[n]o action shall be brought with respect to prison conditions" under 42

18   U.S.C. § 1983 by a prisoner "until such administrative remedies as are available are exhausted." 42

19   U.S.C. § 1997e(a).  Since passage of this section of the PLRA, "[e]xhaustion is no longer left to the

20   discretion of the district court, but is mandatory." Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382

21   (2006) (finding prisoners now must exhaust all available remedies); see also Porter v. Nussle, 534 U.S.

22   516, 524 (2002) ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory.").  "Even when the

23   prisoner seeks relief not available in grievance proceedings," furthermore, "exhaustion is a prerequisite"

24   to filing a civil rights action in federal court. Porter, 534 U.S. at 524.

25             The "proper exhaustion of administrative remedies" requires "using all steps" the prison "holds

26   out, and doing so *properly*," so that the prison "addresses the issues on the merits." Woodford, 126. S.Ct.

27   at 2385 (emphasis in original).  Thus, "[p]roper exhaustion demands compliance with an agency's

28   deadlines and other critical procedural rules." Id. at 2386.  Failure to exhaust such administrative

     remedies requires dismissal of the underlying complaint without prejudice under 42 U.S.C. § 1997e(a).

ORDER
Page - 4

1    McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); Wyatt, 315 F.3d at 1120 (if district court

2    concludes prisoner has not exhausted non-judicial remedies, proper remedy is dismissal of claim without

3    prejudice); see also Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) (suit filed by

4    prisoner before administrative remedies have been exhausted must be dismissed; district court lacks

5    discretion to resolve claim on merits, even if prisoner exhausts intra-prison remedies before judgment).

6        In deciding whether to grant a motion to dismiss for a failure to exhaust administrative remedies,

7    furthermore, the Court "may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315

8    F.3d at 1119-20; see also Ritza, 837 F.2d at 369 (district court has broad discretion as to method to be

9    used in resolving factual disputes arising in connection with jurisdictional or related types of motions,

10   such as matters in abatement; no presumptive truthfulness attaches to plaintiff's allegations, and existence

11   of disputed material facts will not preclude district court from evaluating for itself claims' merits).  If the

12   Court does look beyond the pleadings "to a factual record in deciding the motion to dismiss for failure to

13   exhaust," however, it "must assure" that plaintiff "has fair notice of his opportunity to develop a record."

14   Wyatt, 315 F.3d at 1120 n. 14.  The undersigned finds plaintiff has had such notice here.[1]

15           B.      Plaintiff's Claims Against Defendants Montgomery, Ngete and Naranjo

16       Defendants argue plaintiff failed to exhaust his administrative remedies on those claims he makes

17   against defendants Montgomery, Ngete and Naranjo.  In his complaint, plaintiff alleges these defendants

18   deliberately failed to provide him with proper and timely diabetic treatment prior to his meals, which he

19   asserts violates his Eighth Amendment right to be free from cruel and unusual punishment.  Defendants

20   argue that while plaintiff filed a grievance concerning this issue, he later withdrew it prior to completing

21   the available prison grievance process because he considered the issue to be resolved, and thus he failed

22   to exhaust all of his available administrative remedies in regard to his Eighth Amendment claim.  Plaintiff

23   argues that because he informally resolved this issue, there were no remaining administrative remedies

24   left for him to exhaust, and therefore his claim here should be deemed exhausted.  The undersigned

25   disagrees plaintiff has made this showing.

26       Plaintiff relies on two cases, Gomez v. Winslow, 177 F.Supp.2d 977 (N.D.Cal. 2001), and Ross v.

27

28       [1]As evidence of this, the Court notes plaintiff has submitted both a declaration and an exhibit in support of his response
     to defendant's motion to dismiss and motion to strike. (Dkt. #33). Plaintiff also has voiced no objection or concern in his response
     and motion to strike that he was not provided with a fair opportunity to develop the record here.

County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), to support his argument he has exhausted all of his available administrative remedies here. In Gomez, the district court noted other courts have recognized that "inmates need not exhaust administrative remedies when doing so would be entirely futile," and that "under some circumstances, exhaustion should not be required when no remedy at all is available." 177 F.Supp.2d at 984. It quoted with apparent approval another district court's comment that "[i]t would be a strange rule that an inmate who has received all he expects or reasonably can expect must nevertheless continue to appeal [his grievance to the highest possible level within the prison administrative grievance process], even when there is nothing to appeal." Id. (quoting Nitz v. Correctional Officer French, 2001 WL 747445 *3 (N.D.Ill. 2001).

The facts in Gomez at first glance appear to be substantially similar to those in this case. There, as here, the plaintiff initiated the available prison administrative grievance and appeal process over concerns about his medical treatment:

> In the instant case, plaintiff filed his administrative appeal after learning of his . . . diagnosis because he was concerned about the treatment, or lack thereof, he was receiving for the illness. Throughout the administrative appeal process, his goal was to receive effective treatment for his illness. During the period between the informal review level and the formal review level, Gomez was offered treatment . . . , something he had been seeking for some time. He filed a formal level appeal, though, because he was dissatisfied with the responses he had received from medical staff about his concerns about potential side effects. While the formal level review was pending, and after numerous requests by Gomez, . . . medical staff assured him that he need not worry about side effects caused by . . . treatment. In fact, Gomez apparently told prison officials that his concerns had been addressed. In the Second Level Response Record, Dr. Winslow wrote: "During your interview, you indicated most of your concerns have been addressed and you were now waiting for x-rays to be taken, before you could begin your . . . treatments." Second Level Response. The appeal was granted, and treatment began soon thereafter. Because Gomez's questions related to his concern about possible side effects of . . . treatment and he had been unwilling to sign consent forms for the treatment until those questions were answered, the fact that . . . treatment was commenced is another indication that his concerns had been addressed.

Id. The district court went on to reject the defendants' argument that the plaintiff should have continued with the administrative appeal process, explaining:

> It is unclear what relief defendants believe would have been available to Gomez had he continued to a higher level of appeal. His administrative appeal had been granted, and because he was finally being treated and his questions had been answered, there was no reason for him to press his appeal to a higher level. Were it possible to obtain money damages through the administrative appeal process, there would likely be an argument that there was an available remedy that required exhaustion, but there is no evidence that any further remedy was available. Because Gomez had, in essence, "won" his inmate appeal, it would be unreasonable to expect him to appeal that victory before he is allowed to file suit. Indeed, it appears that plaintiff would have been rebuffed by prison officials had he for some reason tried to pursue his grievance to another level.

At oral argument on this motion, counsel for plaintiff noted that one of the grounds for rejecting or canceling an appeal is that the issue had been resolved at a previous level.

Id. at 985 (finding that plaintiff had adequately exhausted his claim of inadequate medical treatment under PLRA exhaustion requirement).

In Ross, the Tenth Circuit noted the United States Supreme Court has held "the PLRA requires a prisoner . . . to complete administrative processes that offer some sort of relief, albeit not the . . . relief the prisoner wants." 365 F.3d at 1187 (citing Booth v. Churner, 532 U.S. 731, 734 (2001)). The Tenth Circuit too, however, held that "prisoners need not engage in entirely fruitless exercises when no form of relief is available at all." Id. (noting that inmates must exhaust administrative remedies under PLRA only so long as there is possibility of at least some kind of relief). Thus,"[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." Id. A prisoner, therefore, is "not required to file additional complaints or appeal favorable decisions in such cases," and "[w]hen there is no possibility of any further relief," that "prisoner's duty to exhaust available administrative remedies is complete. Id.

The plaintiff in Ross had complained about the safety of the shower floor at the facility where he was incarcerated, after having fallen once allegedly due to the smoothness of the floor and the lack of slip-resistant mats. Id. at 1182. As related by the Tenth Circuit, he subsequently began the facility's grievance process by submitting a pre-grievance resolution form "complaining that the . . . shower was unreasonably dangerous because it lacked a shower mat." Id. at 1187. The facility "responded by furnishing the shower with a mat, thus fully alleviating the problem" the plaintiff raised. Id. It therefore appeared that facility officials were "unable to do anything more in response to" his complaint. Id. The Tenth Circuit pointed out in particular that "nothing in the record" indicated "money damages or any other retrospective relief was available" through the facility's grievance process. Id. As such, the Tenth Circuit held that "[h]aving received all the relief the grievance process could offer," the plaintiff did not then have to do any more to exhaust his administrative remedies in regard to his claims. Id.

Other courts agree with Gomez and Ross that "inmates need not exhaust administrative remedies when doing so would be entirely futile," and that "[w]hen there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete." Id.; 177 F.Supp.2d at 984; see, e.g., Clement v. California Dept. of Corrections, 220 F.Supp.2d 1098, 1106 (N.D.Cal. 2002) (prisoner not

1  required to exhaust further administrative appeals when all relief prison administrative appeal system

2  could provide has been received); Brady v. Attygala, 196 F.Supp.2d 1016, 1021 (C.D.Cal. 2002);

3  Mcgrath v. Johnson, 67 F.Supp.2d 499, 510 (E.D.Penn. 1999) (exhaustion complete when grievance

4  resolved in prisoner's favor and there is no basis for him to appeal).

5       In another case, Hazelton v. Alameda, 358 F.Supp.2d 926 (C.D.Cal. 2005), the district court did

6  not disagree with the approach taken by the Gomez court, but distinguished the facts of that case from the

7  situation it faced. Unlike in Gomez, the plaintiff in Hazelton had not "received all of the relief he had

8  requested during the pendency of his administrative appeal." 358 F.Supp.2d at 933. Rather, in Hazelton,

9  the "plaintiff's appeal "was only partially granted at the first level of formal [administrative] review." Id.

10 at 934. Indeed, "[i]n his written requests for second-level review," the plaintiff "alleged that the first-

11 level response to his appeal was inadequate and misguided, repeated his demands for additional relief,

12 and said he would press his appeal until he obtained relief in court, if necessary." Id. Accordingly,

13 because it was "possible that he might have obtained additional relief if he had pursued his appeal

14 through" the highest "level of formal review, even if he was precluded from obtaining" the particular

15 form of relief he sought, the plaintiff had failed to exhaust all of his available administrative remedies. Id.

16 at 934-35.

17      Here, plaintiff received some, but not all, of the relief he had sought through the DOC's grievance

18 process, and therefore he has fully exhausted only in part his available administrative remedies in regard

19 to the claims he has brought against defendants Montogmery, Ngete and Naranjo. As noted above,

20 Devon Schrum is the DOC's Grievance Program Manager, having held that position since April 2006.

21 (Dkt. #29-2, Exhibit 1, p. 1). According to her, under the DOC's Offender Grievance Program ("OGP"),

22 which has been in existence since the early 1980's, inmates may file grievances over a wide range of

23 aspects of their imprisonment, including application of DOC policies, rules and procedures, the lack

24 thereof which directly affects their living conditions, actions of staff, and retaliation by staff for filing

25 grievances. Id. at pp. 1-2. The OGP also provides a wide range of remedies, including restitution of

26 property, administrative actions, agreement by DOC officials to remedy objectionable conditions in a

27 reasonable period of time, and changes in a local or department policy or procedure. Id. at p. 2.

28      There are four levels of review under the OGP. At Level 0, the complaint or informal level:

        The grievance coordinator at the prison receives a written complaint from an offender

on an issue about which the offender wishes to pursue a formal grievance.  At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance.

Id.  "Routine and emergency complaints accepted as formal grievances begin at Level I," where again the "local [prison] grievance coordinator is the respondent."  Id.  Inmates then may appeal Level I grievances to Level II, where the prison superintendent is the respondent.  Id.  All Level II responses, except for emergency grievances, may be appealed to DOC headquarters.  Id. at p. 3.

Ms. Schrum further states "[t]he DOC's grievance system is well known to inmates."  Id.  She states plaintiff's complaints about prison health care staff "failing to give him insulin shots at the proper time and not letting him have medically prescribed items for the treatment of his diabetes are grievable issues under [the] DOC's grievance system."  Id.  Ms. Schrum also states as follows:

> I have reviewed [the] DOC's official grievance records concerning Mr. Johnson and have determined that he did not file any grievances against any MICC staff on his claim that medical staff failed to give him medically prescribed items such as a glucose meter, testing supplies, and glucose tabs.  I have also determined that Mr. Johnson filed a grievance over the timing of his insulin shots.  This grievance was given DOC grievance No. 0806887.  Grievance No. 0806887 was withdrawn based upon the MICC nursing supervisor's statement that she had met with Mr. Johnson and that Mr. Johnson had considered the grievance resolved.  Mr. Johnson did not appeal the response to grievance No. 0806887 to the next level, level II, or to the highest level, level III.  As such, official DOC grievance records show that Mr. Johnson did not exhaust his grievance remedies on his claims in this case related to the treatment of his diabetes by MICC health care staff.

Id. at pp. 3-4.

Attached to Ms. Schrum's declaration is a "Grievance Summary" for plaintiff, which shows he had submitted one grievance (grievance number 0806887) on March 19, 2008,[2] regarding "Health-Medical" and "Medical-Pill LI," at Level 1.  Id., Exhibit 1, Attachment A.  Plaintiff has attached to the complaint a copy of that grievance, in which he stated:

> I WANT TO GRIEVE: The procedure under which the morning nurses are compelling me to shoot insulin.  They say I have to take my shot around 5:00 to 5:15 am, but breakfast is not served until 6:50 to 7:00 am.  When I tried to explain to nurse "Lanette" (I don't know the name at this time) that an apple and a cracker would not sustain my blood sugar level for the almost 2 hours wait for breakfast after I shoot 5-10 units of aspart insulin, she got an attitude and asked me if I was trying to teach her something, and then told me not to forget I was in F Unit.  I refuse the insulin because I believe the 2 hours wait would have killed me.

---

[2]As noted below, plaintiff has attached a copy of this grievance to his complaint.  That copy, however, indicates the grievance actually was typed on March 26, 2008, and signed on March 27, 2008. (Dkt. #8, Level 1 – Initial Grievance, Log I.D. Number 0806887).

SUGGESTED REMEDY: My insulin be given as the ADA [American Diabetic Association] recommends. 15-20 minutes before each meal. And nurse Lanette attitude be more positive toward prisoners, and let her know she does not know everything.

(Dkt. #8, Level 1 – Initial Grievance, Log I.D. Number 0806887; Civil Rights Complaint Under 42 U.S.C. § 1983 ("complaint"), p. 19, ¶ 77). In response thereto, the prison grievance coordinator wrote that: "Ms. Jean Anderson, Nursing Supervisor, states that she has met with you and that you consider this grievance resolved." (Dkt. #8, Level I – Initial Grievance, Log I.D. Number 0806887). There is no indication in the record, though, that plaintiff appealed or took any further formal administrative action with respect to this grievance or the grievance coordinator's response.

Defendants argue that after filing the above grievance, plaintiff withdrew it at the lowest level by, as noted above, advising Ms. Anderson that he considered the grievance to be resolved. To the extent plaintiff did not agree with the response the prison grievance coordinator provided with respect thereto, defendants assert, he should have appealed that response to the next level of the DOC's grievance process. Defendants further assert that because plaintiff did not appeal the response to the fullest extent possible under that process, he thus has failed to exhaust all his available administrative remedies by pursuing his grievance through all levels thereof.

Plaintiff argues his grievance became moot – and therefore was resolved – the day he was released from solitary confinement back into the prison's general population, after being placed there for allegedly possessing hypodermic needles used to shoot drugs. Specifically, plaintiff asserts his grievance remained unresolved prior to his release from solitary confinement on March 28, 2008. This is so, plaintiff argues, because in the general prison population he now regulates his own insulin injections and the timing of his meals. Plaintiff states his release from solitary confinement therefore granted him all the relief he sought. He further argues defendants have not articulated or shown any other types of relief that are still available to him, and thus have not demonstrated a failure to exhaust here.

Defendants do not dispute plaintiff's assertion that once back in the prison's general population, he could regulate his own insulin injections and the timing of his meals. As noted above, plaintiff had sought to be provided with insulin 15 to 20 minutes prior to his meals. It thus appears that since his release from solitary confinement, plaintiff can now provide that himself. Accordingly, it would seem clear that there is no further relief on this particular issue – i.e., the timing of his insulin shots – plaintiff

1  could receive by appealing his grievance to the highest level of the administrative appeal process.

2  Defendants argue no investigation on plaintiff's grievance was conducted, and he received neither a

3  response thereto nor any remedy therefor.  But given that plaintiff no longer was prevented from timely

4  receiving his insulin, there would appear to be no need for any further response or remedy from prison

5  officials which could provide any additional relief with respect to his receipt thereof.

6        Plaintiff, as noted, did receive a remedy in relation to his grievance, although that remedy may not

7  have been provided by prison officials directly in response thereto.  That is, the remedy occurred upon

8  plaintiff's release from solitary confinement.  Defendants argue there is no connection between plaintiff's

9  grievance and his subsequent release from segregation, pointing out that he was released from segregation

10 only because he was found not guilty at his prison disciplinary hearing.  While this does appear to be so

11 (Dkt. #8, complaint, p. 8, ¶ 28), that fact is irrelevant to issue of whether plaintiff was required to pursue

12 additional administrative remedies regarding the specific issue concerning the receipt and timing of his

13 insulin shots.  The Court also finds such pursuit would be unnecessary, as again plaintiff already received

14 the relief he sought, albeit only indirectly.  In other words, regardless of the lack of direct action on the

15 part of prison officials here, there was no possibility of plaintiff receiving any further relief on this issue,

16 and therefore requiring him to do more in this regard would have been "entirely futile." See, e.g., Ross,

17 365 F.3d at 1187; Gomez, 177 F.Supp.2d at 984.

18        That being said, plaintiff also requested in his grievance that defendant Ngete have a more positive

19 attitude toward prisoners, and that she should be told she does not know everything.  Plaintiff has made

20 no showing that he received the specific type of relief he requested here.  Rather, he merely states his

21 release from solitary confinement allowed him to regulate his own insulin injections and the timing of his

22 meals.  Plaintiff does not allege or set forth facts establishing that along with his placement in the prison's

23 general population, he also obtained the desired relief with respect to the behavior in which defendant

24 Ngete was alleged to have engaged.  While plaintiff now claims in his response to defendants' motion to

25 dismiss that Ms. Anderson subsequently apologized to him for defendant Ngete's "attitude" and told him

26 that he had "a legitimate grievance," he does not allege or show any action, informal or formal, was taken

27 by DOC or prison officials in regard to defendant Ngete's behavior. (Dkt. #33, pp. 7-8).

28        As noted above, however, the type of relief an inmate may obtain through the DOC's grievance

process expressly includes administrative action and agreement by DOC officials to remedy objectionable

ORDER
Page - 11

conditions in a reasonable period of time. Had plaintiff pursued his grievance further, therefore, he might

have obtained such relief against defendant Ngete. In his complaint, plaintiff alleges defendant Ngete

acted with deliberate indifference to his medical condition not only by preventing him from gaining

timely access to his insulin shots, but also by behaving in a hostile and aggressive manner toward him.

(Dkt. #8, complaint, pp. 19-20, ¶¶ 79-81). Thus, by not pursuing additional formal action against

defendant Ngete through the DOC's grievance process with respect to her alleged inappropriate behavior,

plaintiff failed to exhaust his available administrative remedies on any claim he is making in his

complaint that defendant Ngete's behavior violated his constitutional rights.[3]

The Court also finds plaintiff failed to properly exhaust all of his available administrative

remedies in regard to his claim that defendants Montgomery, Ngete and Naranjo prevented him from

possessing his medically prescribed insulin-related items. Plaintiff does not claim that he filed a

grievance regarding this specific issue, nor has he produced any evidence, documentary or otherwise, that

he did so. Again, given that plaintiff certainly could have sought administrative action to remedy this

situation through the DOC's grievance process, his failure to do so constitutes a failure to exhaust here.

Plaintiff also claims defendant Montgomery conspired to deprive him of his due process and equal

protection rights, by having him put in solitary confinement "on false charges" for possessing the same

"glue needles" other white prisoners were allowed to possess. (Dkt. #8, complaint, pp. 15-16, ¶¶ 65-72).

It appears that plaintiff did file a grievance concerning this additional issue, in which he wrote as

follows:

> The WAC 603 Infraction, drug paraphernalia, syringe needles. That infraction was
> predicated on retaliation & race because of legal activities. This is the conclusion of
> my investigation.

(Dkt. #8, Offender Complaint, Log I.D. Number 0809080; Dkt. #29-2, Exhibit 1, Attachment A, p. 2). In

the space provided on the grievance form for indicating a suggested remedy, plaintiff wrote: "Those

C/O's and staff involved stop harassing me." (Dkt. #8, Offender Complaint, Log I.D. Number 0809080).

The written response plaintiff received from the prison grievance coordinator, however, was that this

issue was not grievable, but that "[t]he appeal process already exist [sic] for" infractions and disciplinary

---

[3]To the extent plaintiff is making similar claims in his complaint with respect to the behavior of defendants Montgomery and Naranjo, those claims are unexhausted as well, as the record fails to show plaintiff sought any remedies through the prison's available grievance or other administrative appeal processes.

1  actions. Id. There is no indication, though, that plaintiff pursued this matter further, even though

2  apparently an appeal process was provided through which he could do so. Thus, because it appears an

3  administrative process separate from the DOC's grievance process for seeking a remedy for plaintiff's

4  complaint was available here, this claim against defendant Montgomery too is unexhausted.

5  III.    Failure to State a Claim For Which Relief May Be Granted

6          To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of

7  was committed by a person acting under color of state law and (ii) the conduct deprived a person of a

8  right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor,

9  451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section

10  1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.

11  Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

12          Plaintiff also must allege facts showing how individually named defendants caused or personally

13  participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir.

14  1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory

15  responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58

16  (1978); see also Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982) (theory of *respondeat superior* not

17  sufficient to state section 1983 claim).

18          A.    Defendant Gregoire

19          Plaintiff alleges in his complaint that defendant Christine Gregoire violated his equal protection

20  rights by failing to investigate the claims of racial discrimination at the MICC he set forth in a letter he

21  sent her. Specifically, plaintiff claims defendant Gregoire "continued personally, and through agents" –

22  in particular defendants Cedeno and Ronald Van Boening – "to impose a racist environment on" him and

23  to subject him to "racial discrimination" by defendants James Dye and Herb Johnson. (Dkt. #8,

24  complaint, p. 25, ¶¶ 97-98). Plaintiff further claims he received a written response from defendant

25  Cedeno to the letter he had sent to defendant Gregoire, in which defendant Cedeno refused to investigate

26  plaintiff's claims due to a lawsuit he had filed against the DOC and the MICC regarding those claims.

27  (Id., p. 4, ¶¶ 12-14, and attached letter from defendant Cedeno, dated July 13, 2007).

28          Defendants argue plaintiff has failed to allege defendant Gregoire was personally involved in any

action that caused a violation of his constitutional rights. They assert that plaintiff has failed to show that

ORDER
Page - 13

1  she personally received and read the letter he sent her, that she had no legal obligation to investigate his

2  complaints of racial discrimination, and that she lawfully and logically forwarded the letter to the DOC

3  for a response.  Plaintiff argues that under Washington law, defendant Gregoire, as governor, is

4  responsible for supervising the conduct of all state executive and ministerial officers, and that had she

5  investigated his claims and devised a remedy for those claims, he would not have suffered any

6  discrimination or retaliation because of his racial discrimination lawsuit.

7      Defendants reply that the state statute plaintiff is relying on to support his claim here in actuality

8  concerns "offices" and not "officers", and that, in any event, he improperly is attempting to hold

9  defendant Gregoire liable under a theory of *respondeat superior*.  The undersigned agrees.  Plaintiff has

10  not shown that defendant Gregoire was actually aware of plaintiff's claims or that, even if she were, she

11  was legally obligated to act on them.  The Court concurs that the logical course of action to take here was

12  to forward plaintiff's letter to the DOC to conduct any investigation or take any further administrative

13  action deemed appropriate in the circumstances.  Indeed, given that plaintiff has shown no personal

14  participation on the part of defendant Gregoire, and that he is relying on her supervisory duties to hold her

15  responsible in this case, he has failed to state a proper claim against her on that basis.

16      B.      Defendant Van Boening

17      Plaintiff claims defendant Van Boening conspired with defendant Montgomery, as noted above,

18  and other named defendants to deny him his due process and equal protection rights, by having him put in

19  solitary confinement "on false charges" for possessing the same "glue needles" other white prisoners were

20  allowed to possess. (Id. at pp. 15-16, ¶¶ 65-72).  Plaintiff also claims defendant Van Boening conspired to

21  permit defendant Dye to further "his racist and retaliation goals" against him, including causing him to

22  lose "[c]lassification points," a demotion in custody, transfer to a closed custody prison, lost opportunity

23  to participate in the DOC's EFV program, and loss of good time credits and access to the law library

24  while in the intensive management unit ("IMU"). (Id. at p. 22, ¶¶ 86-87).  Specifically, he alleges

25  defendant Van Boening knew or should have known defendant Dye was a racist and was "singling out"

26  minority inmates for retaliation and harassment, and defendant Van Boening's action or inaction with

27  respect to defendant Dye deprived him of  equal protection of the law. (Id. at ¶ 88).

28      Defendants argue plaintiff has not alleged any specific facts upon which defendant Van Boening

may be held liable under 42 U.S.C. § 1983.  As such, they assert, as with defendant Gregoire, plaintiff has

1  failed to allege any personal participation or personal involvement on the part of defendant Van Boening

2  in the claimed constitutional violations, and again is attempting to hold him liable under an impermissible

3  theory of *respondeat superior*. The undersigned once more agrees. Indeed, as pointed out by defendants,

4  in the fact section of his complaint, plaintiff states defendant Johnson "refused to inform" defendant Van

5  Boening that he had placed him "in 'solitary' confinement for glue needles that prisoners were allowed to

6  order and possess." (Dkt. #8, complaint, pp. 9-10, ¶ 36). At least with respect to the solitary confinement

7  claim, therefore, plaintiff himself appears to admit defendant Van Boening's lack of knowledge.

8         Plaintiff argues defendant Van Boening was personally involved, because he or his designee has a

9  duty to review all pre-hearing confinement placement under the DOC's regulations. But, this merely is an

10  example of his or his designee's supervisory responsibilities. Plaintiff asserts defendant Van Boening

11  also knew he was innocent of the charges that caused him to be put in solitary confinement, but failed to

12  have him released, and knew of defendant Dye's behavior, but kept him in a position "where he could

13  continue to terrorize" minority prisoners." (Dkt. #33, complaint, pp. 11-12). These assertions, though, are

14  entirely conclusory, and thus are insufficient to overcome defendants' motion to dismiss the above claims

15  against defendant Van Boening. That is, plaintiff has not come forth with sufficiently specific facts, or

16  indeed any such facts for that matter, to establish liability on the part of defendant Van Boening here.

17  C.     Defendant Hostetler

18         Plaintiff alleges in his complaint that defendant Hostetler also conspired to deny him his due

19  process and equal protection rights, by having him put in solitary confinement "on false charges" for

20  possessing the same "glue needles" other white prisoners were allowed to possess. (Dkt. #8, complaint,

21  pp. 15-16, ¶¶ 65-72). In the facts section of the complaint, however, the only involvement plaintiff claims

22  defendant Hostetler had here, was that he stated that when the hypodermic needles were found, defendant

23  Dye "called medical and sent for" defendant Montgomery, who then identified the needles as those "used

24  to shoot heroin." (Id. at pp. 8-9, ¶ 31). Plaintiff further claims defendant Hostetler stated that after he was

25  put in solitary confinement, "a directive was issued . . . to shakedown" the lockers of other prisoners, in

26  which were found the same type of hypodermic needles he was put in solitary confinement for, and which

27  were turned over to defendant Johnson. (Id. at p. 9, ¶ 32).

28         All the above alleged facts show, though, is that defendant Hostetler relayed certain information

regarding the above events. Plaintiff does not claim or show that these statements made by defendant

ORDER
Page - 15

1 | Hostetler caused or contributed to the constitutional harm he alleged occurred in regard to his placement

2 | in solitary confinement. Accordingly, plaintiff has failed to demonstrated defendant Hostetler caused or

3 | personally participated in causing that harm as well, and therefore he too cannot be held liable under 28

4 | U.S.C. § 1983 for any civil rights violations here. As such, the Court finds defendants properly have met

5 | their burden of establishing plaintiff has failed to state a proper claim against not only defendant

6 | Hostetler, but also defendants Gregoire and Van Boening.

7 | IV.    Defendant Cedeno

8 | Plaintiff also makes certain claims against defendant Cedeno. Defendants state defendant Cedeno

9 | has not been included in their motion to dismiss, because he has not yet been served and thus has not been

10 | made a party to this action. On September 23, 2008, the Court ordered plaintiff to provide it with a copy

11 | of the complaint and service form for service on defendant Cedeno, at a new address for him provided by

12 | the DOC. (Dkt. #26). The record reflects a copy of the complaint and service form for defendant Cedeno

13 | was received by the Court on September 29, 2008. However, due to an oversight, service by the United

14 | States Marshal was not directed at the time.

15 | Given the deficiencies in the complaint discussed elsewhere in this order to show cause, though,

16 | service of the complaint will not be made at this time. Rather, should plaintiff cure those deficiencies by

17 | filing an amended complaint as ordered below, the Court shall direct that service be made on defendant

18 | Cedeno. Plaintiff need not file another service form for defendant Cedeno, as the Court has the one he

19 | already has submitted therefor. However, he shall provide an additional copy of the amended complaint

20 | so that the Court can attempt service thereof.

21 | V.    Opportunity to Cure

22 | As discussed above, plaintiff's motion to strike contained in his response to defendants' motion to

23 | dismiss (Dkt. #33) and motion to strike contained in his sur-reply (Dkt. #36) hereby are DENIED. Also

24 | as discussed above, while plaintiff exhausted his claim against defendants Montgomery, Ngete and

25 | Naranjo concerning the timing of his insulin shots, he failed to do so with respect to any claim he is

26 | making against those defendants regarding their behavior toward him. Because the complaint contains an

27 | unexhausted claim, dismissal of the complaint "with leave to amend to allege only fully exhausted

28 | claims" is required. Lira v. Herrera, 427 F.3d 1164, 1176 (9th Cir. 2005). Thus, should plaintiff choose to

file an amended complaint as directed below, he shall exclude therefrom any claim that these three

1  defendants violated his constitutional rights stemming from their manner of behavior.

2  In addition, as further discussed above, plaintiff has failed to state a claim for which relief may be

3  granted against defendants Gregoire, Van Boening and Hostetler.  The Court, therefore, is inclined to

4  grant defendants' motion to dismiss in regard to those claims made against them.  However, before a *pro*

5  *se* complaint may be dismissed for failure to state a claim, notice of the deficiencies in the complaint and

6  "an opportunity to amend" must be provided. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1055 (9th Cir. 1992);

7  <u>see also</u> <u>Noll v. Carlson</u>, 809 F.2d 1446, 1449 (9th Cir. 1987) (district court erred by not notifying *pro se*

8  prisoner litigant of amended complaint's deficiencies and allowing him leave to amend).

9  Accordingly, the Court hereby orders plaintiff to file an amended complaint, curing, if possible,

10  the above noted deficiencies, or show cause explaining why defendants' motion to dismiss should not be

11  granted.  In addition, as noted above, plaintiff shall provide an additional copy of the amended complaint

12  so that service may be attempted on defendant Cedeno.  Plaintiff shall do so by **no later than January 9,**

13  **2009**.  The amended complaint must carry the same case number as this one.  If an amended complaint is

14  not timely filed or if plaintiff fails to adequately address these issues, a report and recommendation will

15  be issued recommending defendants' motion to dismiss be granted.

16  Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original

17  pleading. <u>See</u> <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing <u>Hal Roach Studios, Inc. v.</u>

18  <u>Richard Feiner & Co.</u>, 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended), *cert. denied*, 506 U.S. 915

19  (1992).  Thus, if plaintiff chooses to file an amended complaint, the Court will not consider his original

20  complaint.

21  The Clerk is directed to send plaintiff the appropriate forms so that he may file an amended

22  complaint.  The Clerk is further directed to send a copy of this Order and a copy of the General Order to

23  plaintiff.

24  DATED this 9th day of December, 2008.

25

26

27

28

Karen L. Strombom
United States Magistrate Judge